Joseph Work and Intertek Resource Solutions entered into a bilateral arbitration agreement. However, unlike most of the arbitration agreements that this Court has had the pleasure of reviewing, the agreement at issue today is extremely narrow. It does not cover all disputes that could possibly arise between Mr. Work and Intertek. Rather, it only applies to claims that are related to, and quote, my, meaning Mr. Work's, performance of services. And then in addition to that, it's also limited in that it only applies to projects for Conco Phillips. Any other claims between the parties are not going to be covered by this agreement. Uncovered claims include class and collective actions because they are not related to my argument that Mr. Work's agreement permits class arbitration. Nevertheless, the District Court held that the propriety of class arbitration was an issue for the arbitrator. In doing so, the District Court failed to interpret the contract as a whole and look at each provision in light of the other provisions in the agreement. As this Court explained in the 2020 communications, it's difficult to imagine that an agreement which excludes class arbitration would, at the same time, vest the arbitrator with the authority to decide that issue. Nevertheless, that's exactly what the District Court decided here. And in doing so, it focused extremely narrowly on one phrase, a reference to the JAMS employment rules. Ultimately, the District Court committed two errors. First, it erred in finding that the JAMS rules were incorporated by reference as to claims that fell outside of the scope of the arbitration agreement. And second, even if the JAMS rules are incorporated by reference and relevant, the District Court erred in finding that that incorporation by reference was sufficient to be clear and unmistakable evidence of an intent to delegate questions of class arbitrarily. Who drafted the agreement? That is not in the record, but I believe, based on other cases, that it was drafted by Conco Phillips as part of all of their—anyone who came to work on their site had to sign one of those agreements. So Intertek didn't and Work didn't? Correct. Does that bear on anything? I don't think so, Your Honor, because I think ultimately we have to look at the agreement and determine what the party's intent was based on the language of the agreement. And the key language here is the language that references the JAMS rules, and that is found on page 70 of the record, and it's, Any arbitration required hereunder shall be governed by the FAA and administered by JAMS pursuant to its employment rules and procedures. Now the District Court ignored the first part of that sentence, which is any arbitration required hereunder. To understand what arbitrations are required under the agreement, you have to go back to the top and read the scope of covered claims. And the scope of covered claims are causes of action controversies arising out of or related to my performance of services for Intertek Resource Solutions on a project for Conco Phillips. And so the scope of the agreement does not cover class claims. And so as to the first issue, we would direct this court to 2020 Communications and Archer White and Sales. In both of those cases, the agreements had references to the AAA rules. Yet this court held that that did not delegate issues of arbitrability to the arbitrator. So in 2020 Communications, that was class arbitrability. And in Archer and White and Sales, that was just arbitrability generally. And that's important when you compare it to the other cases that this court has found were sufficient to delegate. And the language, the applicable language, I'll use Crawford Professional Drugs versus CVS as a primary example of that. In that case, the scope of covered claims was all disputes in connection with this agreement. So if we're asking whether or not the arbitrator has the authority to interpret the agreement, the fact that the scope of covered claims references the agreement is indicative that they do have that authority. And here, there is nothing in the arbitration agreement that Mr. Work signed that suggests disputes about the agreement itself are issues for arbitration. And so you can actually look at almost every case that was in counts of sites and look at the specific language in the agreement as to covered claims, and you'll see a pattern. I mean, don't the JAMS rules state that these are issues for the arbitrator to decide the scope of arbitrability? They do say that generally, but there are two distinct questions. There's the first question of arbitrability generally, and then there's the second distinct question of class arbitrability. And this court in 2020 Communications made that distinction, and it stated whether the parties here clearly and unmistakably agreed to allow the arbitrator to determine that issue. And so that issue being class arbitration. And if you look at the JAMS rules, you realize that even JAMS doesn't believe that Rule 11b is sufficiently clear and unmistakable to cover class arbitration, because in addition to the general employment rules, they have separate class action procedures. And Rule 2, under the class action procedures, specifically addresses the arbitrator's authority to determine questions of class arbitrability. So if Rule 11b of the employment rules was as broad as the opposing counsel in the district court interpreted it to be, then what is the purpose of the separate class rule that specifically addresses class arbitrability? And so turning back to the other opinions from this court that have found the issue was properly delegated to the arbitrator. In Edwards v. Doordash, the applicable language was any dispute, which would be any dispute including disputes about the agreement. In Green Tree Services v. House, it was any claims arising out of or related to this contract, meaning the arbitration agreement. In Marbella v. Grumman Corp., it was arising out of or relating to this agreement, this arbitration agreement. Same with Peepcor, which is all disputes related to this contract. Petrobac, which is all disputes arising out of this contract. And Robinson, which is any dispute in connection with this agreement. So the key distinction between the majority of the cases cited by Mr. Work is that reference to the agreement itself, which vests with the arbitrator the authority to interpret this agreement. But you do not see that language in our agreement here with Mr. Work. And so, therefore, under our first issue, we think this court should follow 2020 communications and Archer, White, and Sales and hold that notwithstanding the— I mean, you keep talking about 2020 communications, but in 2020 communications, it talks about the question of arbitrability and how it's typically reserved, of course, to decide. But it goes on to say, absent clear and unmistakable language in the arbitration agreement to the contrary. And that seems to be exactly what we have here, clear and unmistakable. The jams rules make it clear that jurisdictional and arbitrability disputes, all of that goes to the arbitrator. Correct. I mean, yes and no. So it depends on if you interpret the question of class arbitrability as within the, you know, group of arbitrability questions. And I think 2020 communications implies that it's not. It's a separate question, class arbitrability versus arbitrability generally. And so, if you look at the— It says, including disputes over the interpretation or scope of the agreement under which arbitration is sought and who are proper parties to the arbitration shall be admitted to and ruled on by the arbitrator. That seems to cover just about everything. Correct. It covers almost everything. The one thing it does not cover is the propriety of class and collective actions. And there's a separate jams rule that specifically addresses when the arbitrator has the authority to rule on class and collective actions. And so, if— Your position that that rule is not incorporated by this pursuant to clause? Correct, Your Honor. It is not incorporated under the pursuant to clause because it's simply not there. And so, nothing in the jams employment rule cross-references the class action procedures. And rather, what jams does is it reverse cross-references. So, in the class action procedures, it says it applies to all of them. And the third, sixth, and eighth circuits each held that kind of daisy chain of back cross-references isn't sufficient to satisfy the clear and unmistakable standard. And so, when we look at both the third, the sixth, and the eighth circuits and compare it to the seventh, the eleventh, and the tenth circuits, they kind of depart on two fundamental principles, which is first being whether or not class arbitrability falls under the general question of arbitrability, and then second, whether or not incorporation of a general rule is sufficient to also incorporate by reference the unmentioned class procedures. And so, Intertech would posit that the third, sixth, and eighth circuits are more consistent with this communications. The court uses that language to determine that issue, and that issue being class arbitration. And when you think about why that's important, it's the fundamental differences between class and collective arbitration that the Supreme Court has recognized in LAMPS plus. So, that being the bet the company stakes without meaningful judicial review, loss of confidentiality, loss of speed and efficiency, and due process considerations of the absent parties. And so, I want to make two points on that issue. If you look at the actual decision of the arbitrator in 2020 communications, in that case, there was a clear exclusion of class arbitrability. Yet, the arbitrator managed to get it wrong and find a way to say that the agreement allowed for class arbitration. And if it is truly an issue for exclusively the arbitrator, then it leaves the company with no remedy to correct that. Because under Section 10, after Henry Schneider, there's no more patently incorrect standard to review under Section 10 of the FAA. And so, we believe that 2020 communications is pretty clear. It aligns with the third, and the sixth, and the eighth circuits. The second question, or second is within the general definition of arbitrability. And as I referenced before, I believe that it is, or that they're distinct. And I think LAMPS plus makes it pretty clear that they have to be distinct just because of the general differences in bilateral versus class arbitrations. And, you know, to one point that really no court has considered is you have to think about the impact of the absent putative plaintiffs. So, this case is a question of an alleged day rate. If the arbitrator were to get it wrong and say, actually, no, I don't think Helix was right. I think this day rate is legal. Well, then that opinion is binding on all of these putative opt-ins who weren't members of this agreement and never volunteered. And they don't have a meaningful judicial review that would be present if they were in a district court. And if there are no other questions, I would like to reserve the remainder of my time for rebuttal. Good morning, and may it please the court. My name is Rex Birch, and I represent Joe Wallstrom. The inquiry here is quite limited. Did the parties agree to delegate issues of arbitrability to the arbitrator? If so, this court must respect that choice. In this circuit, it's crystal clear that a contract does not need to contain an express delegation clause to meet the required standard. For example, an arbitration agreement that evidence that the parties agreed to arbitrate arbitrability. Indeed, this court has held at least twice that an agreement to arbitrate, quote, pursuant to the precise language that's used in this arbitration agreement. To arbitrate pursuant to the JAMS rules expressly adopts those rules as part of the agreement. But what about counsel argument's argument that it adopted certain rules, but not these rules on class arbitrability? I'm sorry, Judge Wilson, I'm not following that. Well, I mean, just because it incorporated the JAMS rules that are listed, I'm looking for the language. It's employment arbitration rules and procedures, and it's policy on employment arbitration minimum standards of procedural fairness. Yes. Counsel opposite says, well, but class arbitrability is set forth in different rules not referenced here. I'm with you. Okay, now I understand. So, the Fifth Circuit has addressed that issue in a case called Reed versus Florida Metropolitan with respect to the AAA rules, and it reviewed kind of the landscape of the law, and it said, look, when you agree to arbitrate according to a specific arbitration service, and you agree to arbitrate by those rules, and they have class action rules that apply in every arbitration, no matter what the rules, it is also incorporated into the arbitration agreement, and indeed, the 2020 case that my friend is in love with makes that point as well, because one of the things it analyzed when it was trying to decide, hey, has the issue of arbitrability been delegated? Well, this agreement incorporates the AAA rules, and class procedure rule three says X. Just as with jams, the AAA class action procedures are separate and apart from the employment rules, but the agreement to arbitrate under that arbitration's rules necessarily incorporates the class action rules. Now, of course, the judge here found that 11, the employment rules themselves were sufficient because, as I believe it was Judge Graves that just read for us, in the jams rules, unlike the AAA rules, the jams rules say specifically who is a proper party to the arbitration is a question of arbitrability assigned to the arbitrator. Don't have to go to the class rules to get there. I would like to follow up on the question of whether or not arbitrability can be diced up the way my friend would like for it to be, such that there are different rules for different aspects of arbitrability. So, in a Robinson versus J&K administration, this court held, if the parties agree to submit the issue of arbitrability to the arbitrator, then the availability of class or collective arbitration is a question for the arbitrator instead of the court. There is no question here that the jams employment rules are not only incorporated, that's the Cooper versus West and Cap and Maravia versus Gruma cases. We also know that the triple, excuse me, the jams rules assign, quote, jurisdictional and arbitrability disputes, including who are proper parties to the arbitration to the arbitrator. Do the class claims involve claims other than work performed for ConocoPhillips? No. And I was going to come around to that, Judge Richman, because that's kind of striking to me. But one thing to keep in mind here is that this isn't, I don't think these policy arguments have a lot of relevance to the question of delegation, but just by way of background, we are talking about a fairly finite group of workers. We're talking about a group of workers, aside from EnterTech, to ConocoPhillips for working on a ConocoPhillips project. And yes, of course, the issue of how Mr. Work was paid has relevance to how his work on that project. It also has relevance to how other people were paid too, but those two things are not mutually exclusive. I also . . . Wait a minute. I'm not sure. Let's say they did work on someone else's premises or whatever, Exxon or whatever. Would that be included by the class claims? It's just on ConocoPhillips when they've done work for ConocoPhillips. Yes. And I'd also like to point out that, you know, my friend admitted this, but it's also in the record at page 60. This is a proposed collective arbitration. And so the concept that we will have people decided without proper notice and that they haven't agreed to this arbitration isn't the case because in the collective action process, a notice goes out and people voluntarily decide, hey, I want to join in on this or not. And finally, Judge Wilson, before I get off the issues, I wanted to clean up a little bit. As far as who drafted the agreement, if you look at the bottom of the agreement, it says that it's an Intertek agreement. It was presented to Mr. Work by folks at Intertek. And so who originally wrote it, I don't know. It says in the agreement that itself that it's Intertek presenting it to Mr. Work and that it's mandatory for Mr. Work to execute Intertek's agreement, otherwise he won't be allowed to work. I don't know that it matters, but I was sort of imagining that Mr. Work didn't draft it. Yeah. Well, I think about it like this. If Mr. Work was to come in here and, you know, I should be allowed not to arbitrate because at the time I executed this agreement, I didn't know that Rule 31 of the JAMS arbitration requirements was going to require me to pay a fee. I thought it was going to be free. And so I shouldn't have to arbitrate because that was unfair to me. He'd be laughed out of court, right? You're charged with understanding what your contract means before you sign it under every state law that I can think of. And yet, we have a giant corporation that has gone through the trouble of creating a mandatory contract of adhesion. I don't think there's any doubt about that. They impose on their workers and they say, hey, we didn't understand the full scope of what that means. And mind you, this is an agreement that they entered into in 2019. It's not like we're talking about in some of these cases you see where there's a lease agreement with an oil company from the 20s where nobody ever thought class arbitration would ever be a thing and somebody wants to say, oh, well, you incorporated the AAA rules, so now I get to have a class action. This is a 2019 agreement. So, under our circuit rules, the agreement also incorporates the JAMS arbitration procedures for the reasons that I just discussed. Reid makes that point with respect to the AAA rules. 2020 echoes that with respect to the AAA rules. This arbitration hasn't begun, right? No, it's ongoing right now. Yeah, we have a panel of three former judges who were arbitrators and we're rocking along. Now, to be sure, my friend argues . . . He has . . . I mean, it's underway, the actual proceedings are underway? Yes. Is the arbitration panel ruled on the class piece of it? No, they have not requested that the arbitrator rule on class arbitrability, but there's a hearing set at either the very end of this year or early next year. My friend does argue that this agreement contemplates only bilateral arbitration. That's not true under the terms of the agreement, much less the rules that the agreement. It covers any and all claims related to the work performed on a ConocoPhillips project, including FLSA claims and including claims, quote, against or involving Intertek, ConocoPhillips, quote, or any other party, end quote, except the excluded claims listed below. We're going to come back to that in a second, but spoiler alert, the accepted claims have nothing whatsoever to do with the claims in this case. They are, for the most part, claims that are with government agencies, like claims for court determination is only preliminary injunctive relief. It's not even full injunctive relief like you had in Archer. It's just preliminary injunctive relief. Everything about this agreement says we intend to resolve our disputes by arbitration. Their relationship is only a work relationship. They don't have a personal relationship, so any and all disputes related to his work for them is going to cover any disputes that those folks are going to have. JAMS Rule 6, just to further put to bed the notion that this is just a bilateral agreement, under JAMS Employment Rule 6, it allows for consolidation. It allows for the arbitrator to rule that third parties must be joined to the arbitration. And so, this is not a set of rules, nor is it an agreement that constitutes, that contemplates what we think of as normal bilateral arbitration. You and I have an arbitration agreement. If we get in a dispute, it's me and you at the arbitration and nobody else. That is precisely not the agreement that we have here. More to the point, we aren't deciding whether this agreement, in fact, permits collective arbitration. Instead, given the strong evidence intended to delegate arbitrability to the arbitrator, is there something that negatives that evidence? Even strong evidence can be overcome by, for example, a direct statement restricting the arbitrator's authority. In Henry Schein, for example, the agreement expressly prohibited any arbitration of an action seeking injunctive relief. So, it was clear that parties didn't want arbitrators touching that issue. In 2020 communications, the arbitration agreement specifically limited the arbitrator's authority. It said, you don't have the authority to deal with class issues. There's absolutely nothing like that agreement, like that, in this agreement. This agreement says, we agree to arbitrate any FLSA claim related to your work, including claims involving, quote, any other person. I don't know how much clearer an arbitration agreement can be with respect to both the delegation and the availability of allowing other people into the arbitration. So, my friend says that it's not enough to say, we agree to arbitrate before jams exclusively and pursuant to their rules, because that's not an expressive corporation. I disagree with that for, you know, at least two reasons, the Maravilla case worse than the Cooper case, from this court saying that it is enough to incorporate it. But I'm curious, and I haven't heard from my friend on the other side, what does it mean? If agreeing to arbitrate before jams pursuant to their rules doesn't mean we're going to arbitrate according to their rules, what does it mean? So, Judge Richman, Judge Graves, I've gone over with you the last two or three times I've been with you all, so unless anyone has any further questions, I'm going to yield the balance of my time. There are a few issues from opposing counsel that I want to address, and first was the contention that this is not a bilateral arbitration agreement. This is a bilateral arbitration agreement. The language that opposing counsel cites to was actually addressed in Judge Scalia's concurrence to LAMPS Plus. And if you compare the language of this agreement to the language specifically addressed in that concurrence, you will see that this is a bilateral arbitration agreement. The second point that I wanted to raise is opposing counsel's attempt to differentiate from 2020 communications. So, in 2020 communications, the arbitration agreement contained an incorporation by reference of the AAA rules. It also contained an express delegation clause delegating issues to the arbitrator. Now, opposing counsel argued that the difference from that case in this case is the fact that 2020 had express exclusionary language. Well, express exclusionary language is not required. Your honors, we could enter into an arbitration agreement and say we want to arbitrate issues A, B, and C. We could write that agreement two different ways. We could write it as we agree to arbitrate issues A, B, and C, or we could write it as we agree to arbitrate all disputes except D through Z. Ultimately, the two provisions will bring you to the same result. And that is the only difference between this arbitration agreement and the arbitration agreement in 2020, is that while 2020 had an express exclusion, this case has a narrow scope of claims covered by the arbitration agreement and therefore also by the fact that it doesn't allow it, excludes it. The next point I wanted to address is opposing counsel's reference to Reed v. Florida Metro University. The problem with Reed is that in Reed, it relied on people for management and the Supreme Court's decision in Greentree v. Basel. And so, in Greentree v. Basel, what the Supreme Court plurality found or concluded was that questions of class arbitrability are not gateway issues. They actually are presumed to be reserved for the arbitrator. However, subsequently in Oxford Health Plans v. Sutter, the court emphatically stated it has not yet decided whether the availability of class arbitration is a procedural or substantive question. And so, to the extent Reed and PEDCOR rely on Basel, that was essentially rejected by the Supreme Court in Oxford Health Plans and is no longer good law. The next point I wanted to raise is opposing counsel's position that by agreeing to the That's not what the language of the agreement says. The language of the agreement is that the parties agree to the employment rules and the employment rules only. And I asked during my initial argument, if the employment rules are as broad as opposing counsel suggests, then what is the purpose of the separate class action rule? The fact that there is a separate class action rule addressing specifically the arbitrator's authority to rule on questions of arbitrability makes clear that Rule 11B is not broad enough to cover it. Otherwise, the class action rule would be superfluous. Well, but 11B says that one issue that's for the arbitrator to decide is who are proper parties to the arbitration. And then you've got counsel opposite reference Rule 6 that talks about consolidating cases. Doesn't that get you class and collective procedures, right? So consolidating cases is a group of people that have voluntarily joined and they all have the same issue. So we're consolidating for efficiency, whereas a class procedure is we're going to reach out to all of these people who may not even want to bring claims and we're going to bring them in the auspice of this dispute. And that's kind of the fundamental difference that the Supreme Court noted in Lamps Plus between bilateral and class or collective arbitrations. And to just hit on one more point, the opposing counsel, their arbitration is actually a class action under the Alaska Wage and Hour Act. I could not find the record site for you, but I know it is in the attachment to Intertech's motion to compel individual arbitration. And the final point I want to raise is to ask this court to look at the dissent in JPEG. And so the dissent in JPEG makes the distinction that we're asking this court to make between class and collective arbitration, that they are not just one gateway question. They are two separate gateway questions, as I think 2020 communications implies. And for these reasons, we ask this court reverse the holding of the district court and remand for the proceeding proceedings as to whether or not the agreement allows class arbitration. Thank you. Thank you, counsel. The court will stand in recess until nine o'clock in the morning.